```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
                                            05 Civ. 7058 (MGC)
Jeffrey Groppi,

                Petitioner,

      -against-

United States of America,                   Opinion

                Respondent.

---------------------------------X
```

**Cedarbaum, J.**

Jeffrey Groppi petitions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On January 13, 2004, Groppi pled guilty to participation in a narcotics conspiracy and now argues that the government misrepresented his plea agreement, violated his constitutional rights, and engaged in outrageous conduct. Further, he argues that he is innocent because he was acting as an agent of the government. For the reasons that follow, Groppi's petition is denied.

BACKGROUND

Groppi was arraigned in September 2002, on one count of conspiracy to distribute and possess with intent to distribute hydrocodone in violation of 21 U.S.C. § 846. The government alleged that Groppi led a group which paid a

1

doctor to provide unnecessary prescriptions which were then resold, given away, or used by members of the conspiracy.

Groppi and the government reached a plea agreement (the "Agreement"). Among other things, the Agreement stated the government's belief that Groppi would be sentenced under a guidelines range of 30 to 37 months in prison. The Agreement contained the following language relevant to this petition:

> "The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted."
> …
> "It is further agreed (i) that the defendant will not file a direct appeal from, nor litigate under Title 28, United States Code, Section 2255 and/or 2241, any sentence within or below the Stipulated Guidelines Range set forth above (30 to 37 months)."
> …
> "Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation."

Groppi's guilty plea was accepted at a January 13, 2004 hearing. During that hearing, the plea agreement and its provisions, which barred any appeal of a sentence that did not exceed 37 months, were discussed at length. Groppi indicated that he understood the plea agreement, had discussed it with his lawyer,[1] knew he was giving up all

---
[1] "Q: Have you discussed this plea with your lawyer?

2

right to appeal,[2] and had entered the agreement voluntarily. Furthermore, Groppi said he had no doubt that he had violated the law in distributing hydrocodone.[3]

---

A: Yes, ma'am
Q: And are you satisfied that your lawyer has given you good advice in this matter?
A: Yes, ma'am
Q: That he has represented you well?
A: Yes, ma'am." Plea Hr'g Tr. at 2.

[2]

"Q: Under our current criminal law you have the right to appeal from my sentence. But you have agreed in this plea agreement that in the event that your sentence does not exceed 37 months in prison, you will not be able to appeal my sentence. You are giving up that right. Do you understand that?
A: Yes, ma'am.
Q: Did you discuss this matter with your lawyer?
A: Yes, ma'am.
Q: Are you giving up that right with full understanding of what you are giving up?
A: Yes, ma'am.
Q: And voluntarily?
A: Yes, ma'am.

Q: I see that in addition to giving up the right to appeal your sentence you have also given up the right to attack it in any other way, to move to vacate your sentence on the ground that there is something improper about it. Do you understand that?
A: Yes, ma'am
Q: And did you discuss with your lawyer –
A: Yes ma'am
Q: – that you were giving up your right to withdraw your plea or attack your conviction or attack your sentence on any ground?
A: Yes, ma'am.
Q: And did you consider carefully whether you wanted to give up that right?
A: Yes, ma'am.
Q: And did you decide to do it with a full understanding of what you were giving up?
A: Yes, ma'am.
Q: And voluntarily?
A: Yes ma'am." Id at 6-8.

[3]

Q: and he [the doctor] and you knew, but more important you knew, that it was a violation of the law?
A: yes, ma'am.
Q: To get prescriptions for drugs you didn't need and didn't use and to distribute them to other people, is that right?
A: Yes, ma'am.
Q: And did you in fact distribute them to other people?

3

Groppi's sentencing hearing took place on June 4, 2004. At the sentencing hearing, Groppi and his attorney, David Levine, mentioned, for the first time, Groppi's extensive history as a law enforcement informant. Over the last 20 years, Groppi appears to have provided assistance to the government in a number of narcotics related investigations. Levine indicated that it was Groppi's status as an informant which led to Groppi's current legal troubles. Groppi allegedly believed he was working on behalf of law enforcement when he became associated with James Sorrentino, a co-defendant in the case. According to Groppi, the government wanted him to infiltrate Sorrentino's crime operations, and as part of that assignment he began obtaining illegal hyrdocodone prescriptions in order to gain Sorrentino's trust. His lawyer argued that Groppi's reliance on pain killers and proximity to illegal conduct put him in a situation that made it easy for him to begin breaking the law himself.

At the hearing, Levine said he was raising Groppi's previous participation with law enforcement "not as any type of agency defense or any defense at all other than to

---

A: Yes, ma'am.
…
Q: But you had no doubt what you were doing was a crime?
A: No, your Honor. That's correct.  Id at 10-11.

4

explain how he found himself in the midst of this case." Sentencing Hr'g Tr. at 5. As he further explained, "as again this is not a defense – but unfortunately his weaknesses with a lack of supervision led his conduct to escalate to a point where he crossed over the line and started to commit criminal conduct." Id at 6.

I asked Levine what his purpose was in discussing Groppi's previous cooperation with law enforcement for the first time at sentencing. This exchange followed:

> "Mr. Levine: My purpose, Judge, is for the Court to have an understanding of who my client is and that in his words he is just not a three-time loser this being his third conviction, but in fact he is in a place where he was supposed to be, meaning in the midst of what was going on, and he unfortunately stepped over the line and started to divert pills for his own use.
> …
> The Court: How does the fact that he wanted to be a cooperator excuse that?
>
> Mr. Levine: It doesn't, Judge. But it was something he felt strongly about that the Court should be aware of his background and not that he set up -- because there are leadership points in his plea agreement and he wanted the Court not to think that he went to this small town upstate and set up some major pill scheme because he is a drug dealer. Ultimately, because of his weaknesses and his health conditions he did become somewhat of a drug dealer diverting drugs for his own use, but this case came at the tail end of what I believe to be a 20-year period of time when he was cooperating and making drug cases for the federal government." Id at 7-8.

When Groppi testified at his sentencing hearing, he did not claim to be using his previous cooperation as a defense.

5

Groppi continued to admit his guilt, saying, "[a]nd as of now I am guilty as the day is long so-to-speak. I made a huge mistake. I broke the law. No two ways about it. And what I am saying here and what [Levine] said, by no means, is lessening the whole aspect of when [sic] has happened, the whole events in the last year and a half or two years of the case." Id at 9.

To further clarify the discussion of Groppi's previous cooperation, Jennifer Rodgers, the prosecuting Assistant United States Attorney, expressed her understanding that Groppi had not acted on behalf of the government in regard to the hydrocodone conspiracy, and that any evidence of Groppi's previous cooperation was unrelated to his current case except to the extent Groppi was asking for a lenient sentence. Neither Groppi nor Levine disagreed with this understanding, and indeed, explicitly indicated that this had been their primary purpose for raising Groppi's previous cooperation for the first time.

Also at the plea hearing, Rodgers indicated that the government would not be making a motion to reduce Groppi's sentence pursuant to U.S.S.G § 5K1.1. Id at 13.

Finally, at the request of Rodgers, I reminded Groppi that he had given up his right to appeal. He replied that

6

he understood.[4]  I sentenced him to 30 months in prison to be followed by 3 years of supervised release. That judgment was entered on June 10, 2004.  Groppi did not appeal.

Groppi was allowed more than 90 days to care for his children and arrange a suitable guardian for them before he was required to turn himself in.  He began serving his sentence on October 1, 2004.

## THE HABEAS CORPUS PETITION

Jeffrey Groppi now petitions to vacate, correct, or set aside his sentence on several grounds.  First, he argues that, because of his cooperation as an informant, the government agreed to make a motion to reduce his sentence pursuant to U.S.S.G. § 5K1.1.  Groppi asserts that he entered the plea agreement on January 15, 2004 after the government induced him to believe that it would seek a reduction in his sentence.  Groppi alleges he did not discover until September 21, 2004 that the government would

---

[4]
  The Court: … Mr. Groppi, you remember that when I took your plea I pointed out to you that you had agreed not to appeal – that you had given up the right to appeal my sentence which you normally would have.
The Defendant: Yes.
The Court: Do you remember that discussion?
The Defendant: Yes, ma'am.
The Court: And you told me at that time that you understood what you were giving up when you did that and that you were doing it of your own free will?  Do you remember that?
The Defendant: Yes, ma'am.
The Court: Is that true?
The Defendant:  Yes, ma'am.  Id at 16.

not be seeking a sentence reduction.  He argues that he was fraudulently induced to enter the plea agreement.

Second, Groppi argues that he "was recruited and trained, by the government to act as an agent for them."  He claims that his "actions fall under estoppel innocence."  Pet. at 4.

Groppi's third and fourth claims relate to an interview that FBI Agent Linda Nemeck conducted with him while he was in prison in Connecticut.  Groppi alleges that Agent Nemeck contacted his lawyer, John Cobb, about interviewing Groppi.  Groppi asserts that he and his lawyer agreed to the interview only after Agent Nemeck assured them that Groppi was not the target of an investigation and was not under indictment.  He further alleges that Agent Nemeck lied, that he actually was a target of the investigation, and that her conduct violated his rights under the First, Fifth, and Sixth amendments to the United States Constitution and also constituted outrageous government conduct.

The government responds that Groppi's petition is time-barred under 28 U.S.C. § 2255, is barred by the terms of the plea agreement, and is barred by Groppi's failure to pursue a direct appeal.  They further argue that none of Groppi's claims has merit.

DISCUSSION

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508, 81 L.Ed.2d 437 (1984). *See also* Tollet v. Henderson, 411 U.S. 258, 266-67, 36 L.Ed.2d 235 (1973); North Carolina v. Alford, 400 U.S. 25, 31, 27 L.Ed.2d 162 (1970).

Similarly, the Second Circuit has regularly "held that knowing and voluntary waivers of a defendant's right to appeal a sentence within an agreed guidelines range are enforceable." United States v. Salcido-Contreras, 990 F.2d 51 (2d Cir. 1993). In Salcido-Contreras, the court refused to allow a defendant to attack his sentence at the high end of the sentencing range when he had agreed not to appeal. The court commented that "[i]n no circumstances…may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement." Id at 53.

Waivers of the right to seek collateral relief under 28 U.S.C. § 2255 are enforceable to the same extent as waivers of direct appeal. In Garcia-Santos v. United States, 273 F.3d 506 (2d Cir. 2001), the court upheld a waiver of collateral relief even when the petitioner had been

mistakenly informed by a district judge that he had the right to appeal.  In United States v. Pipitone, 67 F.3d 34 (2d Cir. 1995), the court refused to allow a collateral attack on a sentence even when the plea agreement did not explicitly waive § 2255 relief.  The Pipitone court was "loathe to countenance so obvious a circumvention of a plea agreement" by allowing a plaintiff to seek collateral relief after waiving the right to appeal directly.  Id at 39.

When a petitioner has pled guilty and waived the right to appeal, courts do not allow either a challenge to the guilty plea or an attack on the sentence.  Generally, courts make an exception to this rule only when the waiver was not knowing or voluntary. In United States v. DeJesus, 219 F.3d 117 (2d Cir. 2000), the court dealt with a petitioner who had signed a waiver similar to Groppi's and claimed he had been denied a motion to reduce his sentence under U.S.S.G. § 5K1.1.  Despite the waiver, the court evaluated a claim of ineffective assistance of counsel, because that claim addressed whether the waiver was knowing and voluntary. Attacks on guilty pleas are treated similarly.  "While a guilty plea cannot ordinarily be collaterally attacked, since it is considered an admission of all of the elements of the crime, it may be challenged on collateral review if

it was not knowing and voluntary." Triestman v. United States, 124 F.3d 361, 367, FN 6 (2d Cir. 1997).

Because Groppi pleaded guilty and waived his right to seek collateral relief, Groppi's claims may only be evaluated on the merits to the extent that he attacks the integrity of the plea and waiver. Groppi has not explicitly alleged that either was made involuntarily or without knowledge, but he makes two potential arguments to support this implication. Groppi's first claim is that the government promised him a sentence reduction and that he entered the plea agreement believing he would get one. Under this theory, Groppi argues that the government's alleged offer of a 5K1.1 motion induced him to enter the plea agreement through fraud or misrepresentation. This argument, however, must be rejected.

The plea agreement specifically states that no downward departure below 30 months was warranted. Agreement at 3. At the plea hearing, Rodgers indicated the government would not be making a 5k1.1 motion. Plea Hr'g Tr. at 13. Even Groppi's own affidavits submitted in support of this petition undermine his argument. In Affidavit A, Groppi states "[d]uring plea negotiations, Prosecutor Rodgers and Agent Nemick [sic] were confronted about lying to my attorney to gain access to me, as well as why hadn't I been

given 5K1.1 considerations for productive information I provided during that interview." Groppi Aff. A at 1. Groppi asserts that this confrontation over a 5K1.1 motion took place during plea negotiations, prior to the January 13, 2004 hearing. Therefore, well in advance of entering his plea, Groppi was informed that the government would not be making a motion to reduce his sentence.

Groppi's habeas petition asserts that he believed he would get a sentence reduction until September 21, 2004. He presents no evidence to support this contention. All of the evidence, including his own supporting affidavits, state that Groppi was aware no motion under U.S.S.G. § 5K1.1 was forthcoming.

The second potential argument Groppi makes involves Groppi's interview with Agent Nemeck which Groppi argues violated his rights. Groppi argues that Agent Nemeck unconstitutionally interviewed him, obtaining information the government threatened to use at trial. He pled guilty in the face of this evidence, but he implies that his plea and waiver were not voluntary because they were coerced by this illegally obtained evidence. This argument has no merit.

A petitioner cannot seek relief from a conviction based on constitutional violations that preceded a valid plea

agreement. <u>Tollet</u>, 411 U.S. at 265. Even if the constitutional violations were unknown at the time the plea was entered, they do not necessarily render the plea invalid. <u>Id</u> at 266-67. As Groppi indicates in Affidavit A, he knew about any potential constitutional violations during plea negotiations. He entered into the plea agreement with full knowledge of any defense this would offer him at trial. He chose to plead guilty anyway. While Groppi's allegations, if true, might have led to the exclusion of evidence at trial, it does not undermine the knowing and voluntary nature of his plea or waiver.

Groppi has failed to present any set of facts that undermines his guilty plea and the waiver of his right to seek collateral review. As a result, all of Groppi's claims are barred by the terms of the plea agreement.

## CONCLUSION

Jeffrey Groppi pled guilty to one count of conspiracy to distribute and possess with intent to distribute hydrocodone in violation of 21 U.S.C. § 846. As part of his plea agreement, he agreed to waive his right to seek direct appeal or collateral review of his sentence. Because he has failed to present any argument or evidence that his guilty plea or waiver were not obtained knowingly and voluntarily, the guilty plea and the waiver of appeal must be enforced.

Accordingly, the petition to vacate, set aside, or reduce sentence is denied.

SO ORDERED.

Dated:   New York, New York
         February 17, 2006

                              S/ _____
                                  MIRIAM GOLDMAN CEDARBAUM
                                  United States District Judge